335 So.2d 778 (1976)
SUCCESSION OF Adrien NUNEZ ex rel. FIRST NATIONAL BANK OF ABBEVILLE, Plaintiff-Appellant,
v.
Mary Olga PICKETT et al., Defendants-Appellees.
No. 5519.
Court of Appeal of Louisiana, Third Circuit.
July 8, 1976.
Rehearing Denied August 18, 1976.
*779 Roger C. Edwards, Abbeville, for plaintiff-appellant.
Gary Theall, Abbeville, Reule Bourque, Kaplan, for defendants-appellees.
Before HOOD, WATSON and PETERS, JJ.
WATSON, Judge.
Plaintiff, First National Bank of Abbeville, filed a petition June 11, 1975, in the Succession of Adrien Nunez to recover $6,862.69 from defendants: Mary Olga Pickett, discharged administratrix of the succession; and her former surety, John Nunez. This amount was alleged to have been erroneously paid to Ms. Pickett by the bank from an account owned by the heirs of another Adrien Nunez. The bank obtained an ex parte order reopening the succession of Adrien Nunez and reappointing Mary Olga Pickett administratrix. Mary Olga Pickett is a nonresident of Louisiana, and a curator ad hoc was appointed to represent her. A judgment had been signed July 20, 1973, sending the heirs into possession; discharging the administratrix; cancelling her bond; and releasing the surety.
John Nunez pleaded the dilatory exceptions of prematurity and unauthorized use of summary proceeding and the peremptory exceptions of no right of action and no cause of action. The curator for Ms. Pickett filed a general denial; declinatory exceptions of insufficiency of service of process and lack of personal jurisdiction; dilatory exceptions of unauthorized use of summary proceeding, nonconformity of the petition with the requirement of LSA-C.C.P. art. 891, vagueness, lack of procedural capacity and improper cumulation of actions; and peremptory exceptions of no cause of action and no right of action.
On November 6, 1975, John Nunez filed a renunciation of mandate in authentic form to revoke his prior recorded appointment as agent for service of process for Mary Olga Pickett. On November 7, 1975, the bank filed a motion and order to have Mary Olga Pickett served through John Nunez. The curator then filed a second declinatory exception of insufficiency of service of process on behalf of Mary Olga Pickett, contending that the original appointment of Nunez as agent was only to satisfy the requirements of LSA-C.C.P. art. 3097(4) and expired when the administratrix was discharged and that the authentic act whereby Nunez renounced and revoked the appointment was filed prior to the time that service was made.
On trial of the exceptions, the curator made a motion to vacate the order of the court reopening the succession and reappointing Pickett as administratrix. The motion was granted; the order was recalled and vacated. The trial court maintained the declinatory exceptions of insufficiency of service of process and lack of jurisdiction as to Mary Olga Pickett and the peremptory exception of no cause of action on behalf of John Nunez. The action against Ms. Pickett and Nunez was *780 dismissed with prejudice as to the succession but the right to institute other proceedings was reserved. The other exceptions were declared moot. All costs were assessed against the bank. The bank has appealed. The curator for Ms. Pickett has answered the appeal asking for attorneys' fees and any other expenses entailed by the appeal.
Motion to Dismiss
A motion to dismiss the appeal was filed by the curator for Ms. Pickett on the ground that the bank deposited a $250 cash appeal bond but failed to pay the filing fee of $25 and the court reporter's fees of $48.60 in addition prior to the lodging of the appeal with this court. These sums were paid out of the $250 cash bond by the Clerk of Court of Vermilion Parish. Subsequent to the lodging of the appeal the bank deposited an additional sum of $545.80 with the parish clerk of court. Once an appeal has been timely lodged in the appellate court, the nonpayment of the filing fee within the three-day period fixed by LSA-C.C.P. art. 2126 is no longer fatal to the appeal. Howard v. Hardware Mutual Company, 286 So.2d 334 (La., 1973). Therefore, the motion to dismiss the appeal is denied.
Merits
LSA-C.C.P. art. 3393[1] provides for reopening a succession for proper cause upon the petition of an interested party after discharge of the succession representative. The issue here is whether there is proper cause to reopen the succession and whether the administratrix may be reappointed.
"Proper cause" has been held to be within the discretion of the trial court. Succession of Yancovich, 289 So.2d 855 (La.App. 4 Cir. 1974). Here, as in Yancovich, there are no funds left in the succession to be administered. See also LSA-C.C.P. art. 1067.
In Molero v. Bass, 190 So.2d 141 (La.App. 4 Cir. 1966) writ refused 250 La. 2, 193 So.2d 523, the court concluded that, after a succession representative has been discharged, he is no longer subject to the court's jurisdiction in that capacity and cannot be recalled under compulsion. The bank contends that Molero can be distinguished because there the alleged creditor did not act timely and the executors made a final accounting. Ms. Pickett did not file a final account, and it is contended that her failure to do so prevents her legal discharge as administratrix. However, *781 LSA-C.C.P. art. 3391[2] provides that the heirs may waive a final account. The bank further contends that a final account would have revealed its error, allegedly the result of Ms. Pickett's malfeasance. The record shows the contrary. The sworn descriptive list of assets in the succession shows two accounts in the name of Adrien Nunez, one with a balance of $6,200.71 and another with a balance of $6,862.69. While the latter account apparently belonged to the heirs of another Adrien Nunez, there is nothing to indicate that Ms. Pickett should have had this knowledge. It is the bank which is charged with knowledge of its customers. The bank's ". . . deposit accounts of individual customers of the bank, . . . shall be deemed confidential and shall not be subject to inspection. * * *" LSA-R.S. 6:70. A final account would have added nothing to the information in the sworn descriptive list of assets. The administratrix was discharged by judgment of July 20, 1973. (TR. 63-64) There is no evidence of malfeasance on the part of the administratrix. The bank asserts it acted without delay upon discovering the error, on or about November 15, 1974, but this was over a year after discharge of the succession administratrix and her surety. Suit was not filed until almost two years had elapsed. The courts of this state no longer have jurisdiction over the nondomiciliary former administratrix, Ms. Pickett.
"The judgment discharging the succession representative relieves him of further duty, responsibility, and authority as succession representative." LSA-C.C.P. art. 3392 (emphasis ours).
We agree with the reasoning of the Fourth Circuit in Molero v. Bass, supra, holding that a succession representative cannot be reappointed against his will and that a nondomiciliary, former succession representative is not subject to the jurisdiction of the court absent special circumstances. Here, the succession proceeding terminated with the judgment of possession. No other steps remained to be taken, and no immovable property was owned by the succession at that time. Cf. Middle Tennessee Council, Boy Scouts of Am. v. Ford, 205 So.2d 867 (La.App. 1 Cir. 1968), where the court was dealing with the status of immovable property in Louisiana.
The bank does not allege fraud or ill practices which would be grounds for nullity of the judgment under LSA-C.C.P. art. 2004. See Succession of Anderson, 323 So.2d 827 (La.App. 4 Cir. 1976).
The trial court was correct in maintaining the exceptions of lack of jurisdiction and insufficiency of service of process as to Pickett.
The bank contends it should be able to proceed against surety Nunez. However, the judgment of possession authorized release of the surety and cancellation of the bond of the administratrix. (TR. 63).
If the succession cannot be reopened and the administratrix reappointed, it follows that the surety cannot be required to assume anew his obligations.
LSA-C.C. art. 3066:

* * * * * *
". . . no suit shall be instituted against any surety on any appeal bond, nor on the bond of any administrator, tutor, curator, executor, or syndic, until *782 the necessary steps have been taken to enforce payment against the principal.

* * * * * *
Suretyship in Louisiana is stricti juris. The surety has been discharged, the succession cannot be reopened and no steps have been taken to satisfy the requirements of Article 3066. We find no error in the conclusion that no cause of action is stated against surety Nunez.
For the foregoing reasons, the judgment of the trial court maintaining the declinatory exceptions of insufficiency of process and lack of jurisdiction as to the defendant administratrix, Mary Olga Pickett, and maintaining the peremptory exception of no cause of action as to the defendant surety, John Nunez, is affirmed.
As ruled by the trial court, the other exceptions are moot.
The curator ad hoc for Mary Olga Pickett, Gary E. Theall, has answered the appeal and has asked for an additional fee for his work in handling the appeal. An additional fee of $350 is awarded and taxed as costs.
All costs are assessed against plaintiff-appellant, First, National Bank of Abbeville.
AFFIRMED.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I agree with my colleagues that this suit should be dismissed as to defendant, Mary Olga Pickett, on the ground that the trial court never acquired jurisdiction over her. In my opinion, however, the dismissal should be without prejudice, and I thus disagree with that part of the majority opinion which dismisses the suit with prejudice as to that defendant. I also disagree with the holding of the majority that the suit should be dismissed as to the remaining defendant, John Nunez.
The trial court decided that service of process had not been made on defendant Mary Olga Pickett, and that that court thus never acquired jurisdiction over her. Despite the fact that jurisdiction was never acquired over Pickett, and the fact that the case has never been tried, the trial court nevertheless rendered judgment on its merits as to that defendant, insofar as it was directed against her as administratrix of the Succession of Adrien Nunez, deceased.
The judgment of the trial court dismisses the suit as to defendant Pickett "with prejudice insofar as this succession proceeding is concerned, reserving, however, unto petitioner, the right to institute further separate and independent proceedings as may be available to it under the law." In rendering that decree, the trial court determined, in part, the merits of the case. It effectively and finally rejected plaintiff's demands against defendant Pickett, as administratrix of the succession. The judgment, if allowed to stand, has the authority of the thing adjudged, and thus it constitutes a final judgment on the merits, even though the court never had jurisdiction over the defendant and the case was never tried. See LSA-C.C.P. arts. 1841 and 1842.
My colleagues, after finding that neither the trial court nor this court had jurisdiction over defendant Pickett, state that "there is no evidence of malfeasance on the part of the administratrix," and at least partly for that reason they affirm the judgment of the trial court which dismisses the suit with prejudice as to Pickett. It is true that "no evidence of malfeasance" was produced, but the majority has overlooked the fact that the case has never been tried, the issue of malfeasance has never been presented to the court, and plaintiff has never been afforded an opportunity to produce evidence as to that issue. It is difficult for me to understand *783 how the majority can hold on the one hand that the trial court never acquired jurisdiction, and find on the other that the court nevertheless has rendered a valid judgment on the merits, finally determining the most important issue presented in the case.
Plaintiff, in its petition, specifically alleges malfeasance and conversion on the part of defendant Pickett. It alleges, for instance, "that Mary Olga Pickett knew or should have known that account No. 690-755 in the name of Adrien Nunez Estate did not belong to the Adrien Nunez of whose succession she was administratrix," that she nevertheless drew checks on that account completely exhausting it, and "that these acts constitute malfeasance and conversion of the property of petitioner.. . ." If the case had gone to trial, it is apparent that the principal issue presented would have been whether Pickett's acts constituted malfeasance or conversion. The majority has decided that there was no malfeasance, and on the basis of that finding it has rendered judgment which will have the authority of the thing adjudged and will preclude plaintiff from again raising that issue, although the case has never been tried and the court has never acquired jurisdiction which would enable it to render such a judgment.
I would concur with the majority in affirming that part of the trial court judgment which sustains the exception to the jurisdiction of the court filed by defendant Pickett, but I would amend that judgment to show that the suit is dismissed without prejudice to plaintiff's rights as against that defendant.
Turning now to the demands made by plaintiff against John Nunez, the record shows that the issues thus presented were before the trial court solely on exceptions of prematurity and of no cause of action filed by that defendant. The trial court, as I understand the decree, sustained the exception of no cause of action insofar as the suit was directed against Nunez in his capacity as surety on the bond of the administratix. The entire suit, however, was dismissed as to that defendant. The trial court decreed that "petitioner's action against said JOHN NUNEZ as surety is hereby dismissed with prejudice in so far as this succession proceeding is concerned, reserving, however, unto petitioner, the right to institute such further separate and independent proceedings as may be available to it under the law."
The majority affirms that judgment on the ground that defendant Nunez has been discharged as surety, that the succession cannot be reopened and that no steps have been taken to satisfy the requirements of LSA-C.C. art. 3066. I think plaintiff is entitled to maintain this suit against defendant Nunez, regardless of whether defendant has been discharged as surety and whether plaintiff has taken adequate steps to enforce payment against the principal, Pickett, as required by the cited article of the Civil Code.
Plaintiff has been and is now attempting to enforce payment against the principal, although up to this time it has been unsuccessful in doing so. As long as plaintiff is making a good faith attempt to enforce payment by the principal, I feel that it is entitled to maintain this action against the surety. In any event, however, plaintiff's demands against Nunez should not be dismissed with prejudice at this point, thus preventing it from ever recovering from the surety even though it should exhaust all possible means of enforcing payment against the person who is primarily responsible.
Aside from the fact that plaintiff should be permitted to maintain this action against Nunez, as surety, I think it also is entitled to maintain the instant suit against that defendant, individually, on the ground of unjust enrichment.
The record shows that John Nunez was an heir of the decedent, Adrien Nunez. After Mrs. Pickett had been appointed administratrix, all of the heirs filed a joint *784 petition alleging that they accepted the succession unconditionally, that they desired to be placed in possession of the property left by the decedent, and that they consented to the discharge of the administratrix. John Nunez was one of the petitioners, and he executed an affidavit stating that he unconditionally accepted the succession. Pursuant to those pleadings, a judgment of possession was rendered on July 20, 1973, recognizing John Nunez as one of the heirs of the decedent, and placing him in possession of an undivided one-sixth interest in all property left by that decedent. The succession proceedings disclose that Nunez received some assets of the succession.
Although plaintiff alleges in this suit that John Nunez is liable as surety, it prays for judgment "against the defendants in solido" for the full amount of its claim. I think the petition states a cause of action against John Nunez, individually, on the ground of unjust enrichment, and that the pleadings are sufficient to at least entitle plaintiff to maintain the action against Nunez for his proportionate share of the indebtedness allegedly owed to plaintiff by all of the heirs.
I realize that the judgment of the trial court, as well as that of the majority of this court, specifically reserves to plaintiff the right to institute other proceedings against either or both of these defendants, and I assume that those judgments thus do not preclude plaintiff from instituting another suit to recover from John Nunez, individually, on the grounds of unjust enrichment. I feel, however, that since the petition in the instant suit states a cause of action against that defendant, individually, plaintiff should be permitted to pursue its claim in this proceeding, rather than be required to institute another suit to obtain that relief.
I think the judgment appealed from should be amended to decree that the suit is dismissed as to defendant, Mary Olga Pickett, without prejudice to plaintiff's right against that defendant, either individually or as administratrix. I also feel that the judgment of the trial court should be reversed insofar as it dismisses the suit as to defendant, John Nunez.
For these reasons, I respectfully dissent.
NOTES
[1] LSA-C.C.P. art. 3393:

"Art. 33939 Reopening of succession has been discharged, if other property of the succession is discovered or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be reopened. The court may reappoint the succession representative or appoint another succession representative. The procedure provided by this Code for an original administration shall apply to the administration of a reopened succession in so far as applicable.
B. After tacit or express acceptance by the heirs or rendition of a judgment of possession by a court of competent jurisdiction, if other property is discovered, or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be opened or reopened, as the case may be, regardless of whether or not, theretofore, any succession proceedings had been filed in court. The court may appoint or reappoint the succession representative, if any, or may appoint another, or new, succession representative. The procedure provided by this Code, for an original administration, shall apply to the administration of successions tacitly or expressly accepted by heirs and in successions where a judgment of possession has been rendered, in so far as same is applicable.
C. The reopening of a succession shall in no way adversely affect or cause loss to any bank, savings and loan association or other person, firm or corporation, who has in good faith acted in accordance with any order or judgment of a court of competent jurisdiction in any previous succession proceedings."
[2] LSA-C.C.P. art. 3391:

"Art. 3391. Discharge of succession representative
After homologation of the final account, or upon proof that the heirs have waived a final account, the succession representative may petition for discharge.
Upon the filing of receipts or other evidence satisfactory to the court, showing that the ". . . no suit shall be instituted against any surety on any appeal bond, nor on the bond of any administrator, tutor, curator, executor, or syndic, until creditors have been paid and that the balance of the property in the possession of the succession representative has been distributed to the heirs and legatees, the court shall render a judgment discharging the succession representative and cancelling his bond."